MYERS, P.J., for the Court.
¶ 1. H.D.H.[1], the appellant, along with the natural mother, T.H., had their parental rights permanently terminated on March 30, 2007. The Prentiss County Department of Human Services (DHS) filed the petition to terminate parental rights on April 7, 2006, and the Chancery Court of Prentiss County terminated the rights after a hearing held on March 1, 2007. H.D.H. now appeals this ruling asking for review of two issues. For purposes of *8 judicial economy we will combine these two issues in our discussion. H.D.H. contends the chancery court erred in terminating his parental rights by determining that DHS had proven its case by clear and convincing evidence. H.D.H. argues that the chancery court erred in determining that since he pleaded guilty to felony child abuse, this factor weighed against him under Mississippi Code Annotated section 93 — 15—103(g) (Rev.2004).
FACTS AND PROCEDURAL HISTORY
¶ 2. H.D.H. and his ex-wife, T.H., have three children born of their former marriage. There are two boys, B.E.H., age 12; G.H.H., age 6; and a girl, M.E.H., age 7. B.E.H. was originally brought to DHS on November 21, 2002, for allegations of physical abuse while in the custody of his parents. Subsequently, M.E.H. and G.H.H. were brought to DHS on October 2, 2003, as a result of allegations of neglect and sexual abuse while in the custody of their parents.
¶ 3. All three children were placed in and out of temporary group homes for several years until H.D.H. was allowed to have custody of the three children in a trial placement on May 18, 2005. One requirement for the trial placement was that H.D.H. had to notify DHS if he was to move from his current address. H.D.H. moved and failed to notify DHS. When DHS finally located H.D.H. for an unannounced home visit, he refused to answer the door until law enforcement arrived to assist DHS. DHS subsequently removed the children from H.D.H.’s home less than one month later on June 6, 2005, due to the deplorable conditions existing in the home and due to the fact H.D.H. moved without notifying DHS. At the time of the hearing, which sought termination of the parental rights, all three children had been placed together in a foster adoption home.
¶ 4. On June 8, 2005, the Prentiss County Youth Court determined all three children to be abused children. The youth court further ordered that the case be referred to DHS to determine whether termination of parental rights was an appropriate step. As a result of the ongoing problems and allegations of neglect and abuse, DHS filed a petition to terminate H.D.H. and T.H’s parental rights. At the time of the hearing, B.E.H. had been in foster care for almost five years, and M.E.H. and G.H.H. had been in foster care for four years. The hearing was held on March 1, 2007, and the judgment terminating H.D.H.’s parental rights was entered by the chancery court on April 3, 2007.
STANDARD OF REVIEW
¶ 5. It is well established that “[t]he chancellor’s findings of fact concerning the termination of parental rights are viewed under the manifest error/substantial credible evidence standard of review.” W.A.S. v. A.L.G., 949 So.2d 31, 34(¶ 7) (Miss.2007) (citing K.D.F. v. J.L.H., 933 So.2d 971, 975(¶ 14) (Miss.2006)). Thus, an appellate court will overturn a chancellor’s finding only if that finding is not supported by clear and convincing evidence. Id.
DISCUSSION
¶ 6. H.D.H. asserts that the chancellor erred in terminating his parental rights. First, H.D.H. argues that there was no evidence in the record supporting the chancellor’s determination that all three children had been victims of a series of abusive incidents. H.D.H. further asserts there was only a determination of one incident of abuse by the youth court. Additionally, H.D.H. argues that no one was ever charged for the sexual abuse of *9 the children; thus, he could not be held responsible for these incidents.
¶ 7. H.D.H. entered into three service agreements with DHS. Service agreements are arrangements between DHS and the parents that seek to implement a plan to return the children safely to their parents’ home. H.D.H. argues that the three service agreements in question only pertained to B.E.H. and not to either of the other children. Therefore, H.D.H. argues that DHS did not make diligent efforts to enact and monitor a service agreement with regard to either of the other children, M.E.H. and G.H.H. In addition, H.D.H. notes that the last service agreement that was introduced was dated June 18, 2003. H.D.H. asserts that the date of the last service agreement demonstrated a lack of diligence on the part of DHS, as no new service agreements were made after June 18,2003.
¶ 8. H.D.H. next contends that there is no evidence in the record supporting the chancellor’s determination that he exhibited ongoing behavior which would make it impossible to return the children to him. H.D.H. acknowledges that the children were adjudicated to be abused children. H.D.H. argues that the chancery court has never determined, at any time prior to the termination hearing, that reunification was not in the best interest of the children.
¶ 9. Finally, H.D.H. argues that DHS did not exhibit due diligence with regard to creating a service agreement to help him regain custody of his children after the trial placement which occurred from May 18, 2005, until June 6, 2005. H.D.H. argues that DHS appeared to be apathetic toward him in his children’s custody situation. H.D.H. claims that he made many attempts to contact his children, which were rebuffed by DHS, further demonstrating their lack of due diligence in helping him reconnect with his children. H.D.H. also asserts on appeal that he was not the biological father of the child, B.E.H., whom he pleaded guilty to abusing.
¶ 10. DHS argues that the testimony of Tonya McAnally, a social worker at DHS, established that there were allegations of sexual abuse of the children when they were removed from the home. McAnally testified that H.D.H. and T.H. were still together with the children at the time of the allegations. McAnally testified that there were medical exams showing that the children were abused during the time they were under the supervision of H.D.H. and T.H. DHS further argues that both H.D.H. and T.H. left the state during the sexual abuse investigation. DHS also argues that while H.D.H. only admitted guilt to the child abuse of B.E.H., this admission alone constituted grounds for termination of parental rights for all three children under Mississippi Code Annotated section 93 — 15—103(c).
¶ 11. Next, DHS argues that it made diligent efforts to put an effective service agreement in place with regard to all three children, not just B.E.H. DHS argues first that B.E.H. had been in its care since November 21, 2002, and M.E.H. and G.H.H. had been in its care since October 2, 2003, well over a three-year period of time. DHS argues that considerable and diligent effort was expended to form a service agreement with H.D.H. in regard to all three children. In support of this argument, DHS points out that social worker, McAnally, testified that one service agreement was given to H.D.H.’s attorney in the earlier youth court proceedings. McAnally testified that she never received the agreement back from H.D.H. DHS argues that, in addition to the service agreements, there were also task assignments for H.D.H. to complete after the last service agreement dated June 18, 2003. DHS argues that it requested that *10 H.D.H. complete a psychological evaluation in order to obtain visitation. H.D.H. was also assigned a task in the same agreement to attend and complete a twenty-six-week program. DHS also argues that H.D.H. violated terms of the service agreements by moving during the trial placement without notifying DHS. DHS also points out there was a period from July 2005 until May 2006 where H.D.H. had no contact with the children. DHS contends that this demonstrates H.D.H.’s extreme lack of cooperation. Additionally, McAnally testified that she provided all services available to help both H.D.H. and T.H. reunite with their children.
¶ 12. DHS argues that there is ample evidence in the record to support the chancellor’s determination that both parents “exhibited] ongoing behavior which would make it impossible to return the child to the parent’s care and custody.” Miss.Code Ann. § 93-15-103(e). McAnally testified to multiple problems dating back several years, noting that both the Monroe County DHS and the Prentiss County DHS worked with both the parents. McAnally testified that H.D.H. was subsequently not allowed to attend counseling sessions. These sessions proved unsuccessful for both of the parents. McAnally testified that both parents had additionally attended parenting classes, but with no success. Testimony at trial also established that H.D.H. attended only two and a half months of his court-ordered counseling program, which was ordered to continue for a longer period of time. Testimony also established that H.D.H. had no contact with his children from July 2005 until May 2006. Further, H.D.H., along with T.H., pleaded guilty to felony child abuse charges on the eldest child, B.E.H. The social worker, McAnally, testified that when M.E.H. and G.H.H. were taken out of H.D.H.’s custody, they were infested with lice and scabies. Further, the unannounced check showed that the house H.D.H. was living in with the children was in deplorable condition. DHS also argues on appeal that H.D.H.’s lack of interest in attending all the youth court hearings of the three children further demonstrates his lack of commitment to rectify past parenting problems.
¶ 13. DHS also notes that all three children were adjudged by the youth court to be abused and neglected children, and the youth court referred the case to DHS for a determination of whether termination of parental rights was needed. Therefore, DHS argues that the chancellor was correct in weighing this factor in favor of terminating parental rights. Additionally, DHS argues that even if B.E.H. was established not to be the biological child of H.D.H., he still was convicted of felony child abuse upon B.E.H. Under Mississippi Code Annotated section 93-15-103(g), it states that grounds for termination of parental rights may be had “when a parent has been convicted of any of the following offenses against any child: ... (v) felonious abuse or battery of a child under the provisions of section 97-5-39(2).” (Emphasis added). DHS argues that it is of no consequence that the child H.D.H. was convicted of abusing was not his biological child. DHS claims that the conviction for child abuse is still a valid ground for the chancellor to terminate H.D.H.’s rights to his biological children.
¶ 14. Mississippi Code Annotated section 93-15-103(3) (Rev.2004) provides the following grounds on which termination of parental rights shall be based:
(a) A parent has deserted without means of identification or abandoned a child as defined in Section 97-5-1, or
(b) A parent has made no contact with a child under the age of three (3) for six (6) months or a child three (3) years of age or older for a period of one (1) year; or
*11 (c) A parent has been responsible for a series of abusive incidents concerning one or more children; or
(d) When the child has been in the care and custody of a licensed child caring agency or the Department of Human Services for at least one (1) year, that agency or the department has made diligent efforts to develop and implement a plan for return of the child to its parents, and:
(I) The parent has failed to exercise reasonable available visitation with the child; or
(ii)The parent, having agreed to a plan to effect placement of the child with the parent, fails to implement the plan so that the child caring agency is unable to return the child to said parent; or
(e) The parent exhibits ongoing behavior which would make it impossible to return the child to the parent’s care and custody:
(I) Because the parent has a diagnosable condition unlikely to change within a reasonable time such as alcohol or drug addiction, severe mental deficiencies or mental illness, or extreme physical incapacitation, which condition makes the parent unable to assume minimally, acceptable care of the child; or
(ii) Because the parent fails to eliminate behavior, identified by the child caring agency or the court, which prevents placement of said child with the parent in spite of diligent efforts of the child caring agency to assist the parent; or
(f) When there is an extreme and deep-seated antipathy by the child toward the parent or when there is some other substantial erosion of the relationship between the parent and child which was caused at least in part by the parent’s serious neglect, abuse, prolonged and unreasonable absence, unreasonable failure to visit or communicate, or prolonged imprisonment; or
(g) When a parent has been convicted of any of the following offenses against any child:
(I) rape of a child under the provisions of Section 97-3-65,
(ii) sexual battery of a child under the provisions of Section 97-3-95(c),
(iii) touching a child for lustful purposes under the provisions of Section 97-5-23,
(iv) exploitation of a child under the provisions of Section 97-5-31,
(v) felonious abuse or battery of a child under the provisions of Section 97-5-39(2),
(vi) carnal knowledge of a step or adopted child or a child of a eohabitat-ing partner under the provisions of Section 97-5-41, or
(vii) murder of another child of such parent, voluntary manslaughter of another child of such parent, aided or abetted, attempted, conspired or solicited to commit such murder or voluntary manslaughter, or a felony assault that results in the serious bodily injury to the surviving child or another child of such parent; or
(h) The child has been adjudicated to have been abused or neglected and custody has been transferred from the child’s parent(s) for placement pursuant to Section 43-15-13, and a court of competent jurisdiction has determined that reunification shall not be in the child’s best interest.
¶ 15. The chancery court made several important determinations in its opinion and judgment. The chancery court found that H.D.H. and T.H. could not be said to be morally and mentally unfit by clear and convincing evidence. In addition, the *12 chancery court could not find that the parents had no contact with the children, such that they were constructively abandoned.' However, the chancery court did find that the children had been the victims of physical and sexual abuse, which have caused them permanent emotional and psychological damage. The chancery court also determined that all the children had been in the custody of DHS for four years or more, and DHS had made diligent and ongoing efforts to implement a plan to return all three children to their parents. The chancery court found that H.D.H.’s implementation of DHS’s plan had been less than satisfactory, and the court further found that both parents had exhibited behavior that made it impossible to return the children to them. The chancery court found that, while there was no deep-seated antipathy by the children toward either parent, there was an adjudication that the children were neglected and abused.
¶ 16. The chancery court determined that both parents pleaded guilty and were convicted of felonious child abuse under Mississippi Code Annotated section 97-5-39(2) (Rev.2006), a ground for termination of parental rights. The chancery court concluded that it was satisfied, by clear and convincing evidence, that both parents met five of the grounds for termination of their parental rights provided in Mississippi Code Annotated section 93-15-103. The chancery court then ordered the parental rights of both H.D.H. and T.H. terminated.
¶ 17. While H.D.H. argues that he only pleaded guilty to abuse of B.E.H., and not M.E.H. or G.H.H., we agree with DHS’s argument that abuse of one child is enough under Mississippi Code Annotated section 93 — 15—103(3) (c) to terminate H.D.H.’s parental rights to all three children. In fact, the Mississippi Supreme Court has stated that “no mother should be permitted to have custody or control of any children if she permits one child to be molested.” Carson v. Natchez Children’s Home, 580 So.2d 1248, 1258 (Miss.1991). It is of no matter that the child H.D.H. was convicted of abusing under Mississippi Code Annotated section 97-5-39(2) may not be his biological son. The chancellor properly considered all of the factors listed above in Mississippi Code Annotated section 93-15-103 when he determined that termination of H.D.H.’s parental rights was proper. Therefore, we cannot find that the chancellor committed manifest error in his determination that parental rights should be terminated. Accordingly, we affirm.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF PRENTISS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.

. The full names of the minors and their parents will not be used in an attempt to prevent their being further traumatized.